No. 21-14144-D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

FRIELL EUGENE JOHNSON,
*Defendant/Appellant.*
_____

On Appeal from the United States District Court
for the Southern District of Florida
_____

BRIEF OF THE APPELLANT
FRIELL EUGENE JOHNSON
_____

MICHAEL CARUSO
Federal Public Defender

Kate Taylor
Assistant Federal Public Defender
Attorneys for Appellant Johnson
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States v. Friell Eugene Johnson
## Case No. 21-14144-D

Appellant Friell Eugene Johnson files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Caruso, Michael, Federal Public Defender

Ecarius, Daniel, Assistant Federal Public Defender

Fajardo Orshan, Ariana, Former United States Attorney

Gonzalez, Juan Antonio, Former United States Attorney

Johnson, Friell, Defendant

Lapointe, Markenzy, United States Attorney

Louis, Hon. Lauren Fleischer, United States Magistrate Judge

Moore, Hon. Michael K., United States District Judge

O'Byrne, Hayden Patrick, Assistant United States Attorney

Otazo-Reyes, Hon. Alicia M., United States Magistrate Judge

Rier, Andrew, Attorney at Law

Rivero, Laura Thomas, Assistant United States Attorney

Rubio, Lisa Tobin, Assistant United States Attorney

Smachetti, Emily M., Assistant United States Attorney

Stone, Emily Rose, Assistant United States Attorney

Taylor, Kate, Assistant Federal Public Defender

Torres, Edwin G. Hon., United States Magistrate Judge

_/s/ Kate Taylor_
Kate Taylor

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a question of first impression in this Court: whether, following this Court's decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), Florida attempted manslaughter qualifies as a "crime of violence" as defined by Section 4B1.2(a)(2) of the United States Sentencing Guidelines. Mr. Johnson therefore respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF CITATIONS ..................................................................... iv

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................ 2

STATEMENT OF THE CASE ............................................................... 3

   I. Course of Proceedings and Disposition in the District Court,

      and Statement of Facts ............................................................. 3

   II. Standard of Review ................................................................. 7

SUMMARY OF THE ARGUMENT ........................................................ 8

ARGUMENT AND CITATIONS TO AUTHORITY .............................. 10

   I. Mr. Johnson's Prior Conviction for Florida Attempted

      Manslaughter is Not a Crime of Violence .............................. 10

      A.    Following *Dupree*, Florida Attempted Manslaughter Is Not

            a Crime of Violence under § 4B1.2(a)(2) ............................. 11

      B.    Florida Manslaughter Is Overbroad .................................... 18

II. The District Court Further Erred in Ordering that Mr. Johnson's Sentence Run Consecutively to Any State-Court Sentences.........21

III.     Following *Bruen*, § 922(g)(1) is Facially Unconstitutional, and Mr. Johnson's Conviction Must Be Vacated............................25

CONCLUSION..........................................................................30

CERTIFICATE OF COMPLIANCE .........................................31

CERTIFICATE OF SERVICE ................................................32

# TABLE OF CITATIONS

**CASES**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. of N.J.*,

910 F.3d 106 (3d Cir. 2018) ................................................. 28

*Borden v. United States*, 141 S. Ct. 1817 (2021) ............................... 19

*Burgess v. United States*, 533 U.S. 124 (2008) ....................................... 13

*Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015) ...................... 14

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......................... 27, 28

*Gall v. United States*, 552 U.S. 38 (2007) ...................................... 22, 24

*In re Burgest*, 829 F.3d 1285 (11th Cir. 2016) ....................................... 19

*In re Williams*, 898 F.3d 1098, (11th Cir. 2018) .................................. 19

*Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ............. 28

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ........................................ 29

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ..................................................... 12

*Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016) ..................... 20

*Nat'l Rifle Ass'n v. Bondi*, __ F.4th __, 2023 WL 2484818

(11th Cir. Mar. 9, 2023). ....................................................... 26

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,

142 S. Ct. 2111 (2022) ...................................... 2, 9, 26, 28, 29

*Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) ................. 19, 20

iv

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ........................ 20

*United States v. Bidwell*, 393 F.3d 1206 (11th Cir. 2004) ............. 21, 22

*United States v. Brown*, 772 F.3d 1262 (11th Cir. 2014) ................. 22, 24

*United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014) ...................... 7

*United States v. Dupree*, 57 F.4th 1269

   (11th Cir. 2023) ................................. i, 2, 7, 8, 11, 12, 13, 14, 15, 16, 17

*United States v. Garcia-Perez*, 779 F.3d 278 (5th Cir. 2015) ..…......... 19

*United States v. Gonzalez-Murillo*, 852 F.3d 1329 (11th Cir. 2017) ...... 21

*United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) ............................. 13

*United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022) .......... 28

*United States v. Mendoza-Padilla*, 833 F.3d 1156 (9th Cir. 2016) ......... 19

*United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015) ............ 28

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) .................... 22, 24

*United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) .......................... 26

*United States v. Saac*, 632 F.3d 1203 (11th Cir. 2011) .......................... 25

*United States v. Verdugo–Urquidez*, 494 U.S. 259 (1990) ...................... 27

*United States v. Ward*, 796 F. App'x 591 (11th Cir. 2019) ............... 22, 23

*Witte v. United States*, 515 U.S. 389 (1995) ........................................... 21

*Young v. United States*, 936 F.2d 533 (11th Cir. 1991) ........................... 7

Gov. Br. (DE 21), *United States v. Metzler*, No. 22-13759

   (11th Cir. Feb. 16, 2023) ........................................................ 11, 17, 18

# STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 3231 ............................................................... 1

18 U.S.C. § 3553(a) ..................................................... 10, 28

18 U.S.C. § 3584 ................................................... 24, 28, 29

18 U.S.C. § 3742 ............................................................... 1

18 U.S.C. § 922(g)(1) ........................................ 2, 3, 10, 30, 35

28 U.S.C. § 1291 ............................................................... 1

Fla. Stat. Ann. § 782.07(1) ............................................. 21

U.S.S.G. § 2K2.1(a)(3) ........................................... 5, 6, 9, 11

U.S.S.G. § 2K2.1(a)(4) ..................................................... 5

U.S.S.G. § 4B1.2 ................... i, 2, 5, 6, 7, 9, 11, 12, 13, 14, 18, 19

U.S.S.G. § 5G1.3 ........................................ 2, 6, 9, 24, 25, 28

2 Wayne R. LeFave, *Substantive Criminal Law* § 15.4 (2d ed. 2007) ....... 21

Carlton F.W. Larson, *Four Exceptions in Search of a Theory:*

    *District of Columbia v. Heller and Judicial Ipse Dixit,*

    60 Hastings L.J. 1371 (2009) ........................................ 34

Eleventh Circuit Pattern Jury Instructions, O46.1, Voluntary

    Manslaughter, 18 U.S.C. § 1112 ..................................... 21

II Noah Webster, *An American Dictionary of the English Language*

    (1828) .............................................................. 32

# STATEMENT OF JURISDICTION

The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231 because Mr. Johnson was charged with an offense against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. This appeal was timely filed on November 29, 2021 (DE 36), from the final judgment and commitment order entered on November 19, 2021 (DE 35), disposing of all claims between the parties to this cause.

# STATEMENT OF THE ISSUES

I.      Whether, following *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), Florida attempted manslaughter is a "crime of violence" as defined by Section 4B1.2(a)(2) of the United States Sentencing Guidelines.

II.     Whether the district court erred in ordering that Mr. Johnson's sentence run consecutively to any yet-to-be-imposed state sentence contrary to Section 5G1.3(c) of the United States Sentencing Guidelines.

III.    Whether, following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), 18 U.S.C. § 922(g)(1) is facially unconstitutional and, as a result, Mr. Johnson's conviction must be vacated.

## STATEMENT OF THE CASE

The appellant was the defendant in the district court and will be referred to by name ("Friell Johnson" or "Mr. Johnson"). The appellee, United States of America, will be referred to as the government. The record will be noted by reference to the volume number, document number, and page number of the Record on Appeal as prescribed by the rules of this Court.

Mr. Johnson is presently incarcerated.

## I. Course of Proceedings and Disposition in the District Court, and Statement of Facts

On March 19, 2021, Friell Johnson was indicted on one count of possessing a firearm having previously been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). (DE 1).

He subsequently pleaded guilty to the sole count of the indictment, pursuant to an agreement with the government. (*See* DE 22–26, 28). In the factual proffer, Mr. Johnson and the government agreed that, had the case proceeded to trial, the government would have been able to prove the following facts:

> On September 7, 2020, law enforcement saw [Mr. Johnson] exit an apartment and observed [him] enter the front passenger seat of a sedan which drove away. A team of

detectives followed the sedan in unmarked surveillance vehicles, and then boxed in the sedan while activating their emergency lights. During this stop, detectives saw [Mr. Johnson] make a series of furtive movements where he reached onto his person and then leaned and reached forward towards the glovebox in front of him. Law enforcement then observed him reach his right arm across his body as though he was stuffing something into the space between the seat and the center console. Detectives removed [Mr. Johnson] from the vehicle and saw a Glock pistol (later identified as Glock Model 19 pistol, serial number BCRN463) partially stuffed in the space by the seat where [he] had been reaching. Detectives found a magazine for the Glock pistol in the glovebox where [Mr. Johnson] had been reaching. There were nine rounds of 9mm ammunition in the magazine. The magazine also had a gold Dusse cognac sticker on it.

[Mr. Johnson] had an Instagram account with the moniker realrambo3. On or about August 31, 2020, [Mr. Johnson] posted an image of himself with what appears to be a pistol protruding from the front of his waistband. Inserted into this pistol was what appears to be the same magazine with the gold Dusse cognac sticker on it.

(DE 25:12). Mr. Johnson further acknowledged that he had previously been convicted of a felony, that he was aware of his status as a convicted felon, and that his civil rights had not been restored. (*Id.* at 2). Finally, the parties agreed that the firearm and ammunition had traveled in interstate or foreign commerce. (*Id.*).

In advance of Mr. Johnson's sentencing hearing, the United States Probation Office prepared a draft Presentence Investigation Report

("PSI"). (*See* DE 29). In the PSI, Probation determined that Mr. Johnson was subject to an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3) because (1) the firearm in question was a semiautomatic firearm capable of accepting a large capacity magazine; and (2) Mr. Johnson had a prior conviction for a crime of violence as defined by U.S.S.G. § 4B1.2(a)(2). Thus, Probation calculated Mr. Johnson's base offense level as 22; without a prior conviction for a crime of violence, Mr. Johnson's base offense level would have been 20. *Compare* U.S.S.G. § 2K2.1(a)(3) *with* § 2K2.1(a)(4).

Mr. Johnson timely objected to the PSI, arguing that his Florida state prior conviction for attempted manslaughter did not qualify as a crime of violence as defined by U.S.S.G. § 4B1.2(a)(2) (the "enumerated offense clause"). (DE 32:1–5).[1] Mr. Johnson first argued that Florida manslaughter is overbroad, and therefore not a crime of violence. (*Id.* at 2–3). He further argued that, even if Florida manslaughter were a crime of violence, Florida *attempted* manslaughter is not. (*Id.* at 3–5). Specifically, he argued that Application Note 1 to § 4B1.2—which states

---

[1] Mr. Johnson was granted an extension of time in which to file his PSI objections. (*See* DE 30–31).

that "crime of violence" and "controlled substance offense" includes inchoate offenses (*i.e.* "aiding and abetting, conspiring, and attempting to commit such offenses")—impermissibly expanded the text of § 4B1.2(a)(2)'s definition of "crime of violence," which excludes inchoate crimes. (*Id.*). Thus, Mr. Johnson's *attempted* manslaughter prior conviction could not qualify as a crime of violence predicate under §§ 2K2.1(a)(3) & 4B1.2(a)(2). (*Id.*).

Mr. Johnson also included in his written PSI objections a request that, pursuant to U.S.S.G. § 5G1.3(c), the court order that his prison sentence run concurrently with the anticipated terms of imprisonment in his pending state cases identified in the PSI. (*Id.* at 5; *see also* PSI ¶¶ 56–58 (stating that, according to the arrest affidavits, the pending cases "reflect[] the same circumstances as those in the instant offense")).

The government did not respond to or oppose Mr. Johnson's objections. U.S. Probation, in its revised PSI, maintained its position that Mr. Johnson's prior conviction for Florida attempted manslaughter was a crime of violence as defined by Application Note 1 to U.S.S.G. §4B1.2(a)(2). (*See* DE 33-1).

At the November 18, 2021, sentencing hearing, the district court overruled Mr. Johnson's objections, agreeing with Probation that Mr. Johnson's prior conviction qualified as a crime of violence under the enumerated offense clause. (*See* DE 35 & DE 44, Sentencing Tr., at 7). The court imposed an 84-month custodial sentence, followed by three years of supervised release. (DE 35). The court also denied Mr. Johnson's request for a concurrent sentence, specifically stating that the sentence "is to run consecutive to any sentence imposed in the state court cases." (*See* DE 35:2 & DE 44:13).

Mr. Johnson timely filed his notice of appeal on November 29, 2021. (DE 36).

## II.    Standard of Review

This Court reviews legal issues *de novo* including Constitutional issues and the interpretation and application of the Sentencing Guidelines. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023); *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014). The government bears the burden of proving that a conviction qualifies as a crime of violence for purposes of the Guidelines. *Young v. United States*, 936 F.2d 533 (11th Cir. 1991).

## SUMMARY OF THE ARGUMENT

Florida attempted manslaughter is not a "crime of violence" as defined by U.S.S.G § 4B1.2(a)(2) (the enumerated offense clause). Although generic "voluntary manslaughter" is an enumerated offense, the clause's plain text unambiguously *excludes* inchoate offenses such as attempts. In light of the clause's unambiguous plain language, this Court's recent *en banc* decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), precludes this Court from deferring to the commentary's expansion of the definition to include inchoate offenses. Thus, because Mr. Johnson's prior conviction for Florida attempted manslaughter is not a crime of violence, the district erred in increasing his base offense level under U.S.S.G. § 2K1.1(a)(3).

Additionally, the district court erred in ordering that Mr. Johnson's sentence run consecutively to any yet-to-be imposed state sentences in contravention of U.S.S.G. § 5G1.3. The court's failure to consider § 5G1.3 or account for its policy, to adequately explain its deviation from § 5G1.3 or articulate any 18 U.S.C. § 3553(a) factors, combined with its erroneous understanding of its authority and the effect of its decision, constituted procedural error.

Finally, Mr. Johnson's conviction must be vacated because 18 U.S.C. § 922(g)(1) is facially unconstitutional following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), because his conduct falls within the Second Amendment's plain text and the government cannot demonstrate that § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation.

## ARGUMENT AND CITATIONS TO AUTHORITY

## I. Mr. Johnson's Prior Conviction for Florida Attempted Manslaughter is Not a Crime of Violence.

The United States Sentencing Guidelines provide for a higher base offense level when someone convicted of being a felon in possession of a firearm has a previous conviction for a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 2K2.1(a)(3) (setting a base offense level of 22 if the instant offense involved a semiautomatic firearm capable of accepting a large capacity magazine *and the defendant committed the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense*.) "Controlled substance offense" and "crime of violence" are defined in U.S.S.G. § 4B1.2(a) & (b). *See* U.S.S.G. § 2K2.1 cmt. n.1.

As relevant here, a felony conviction qualifies as a crime of violence under § 4B1.2(a)(2) (the enumerated offense clause) if it "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." The commentary expands the definition to include inchoate offenses: "'Crime of violence' . . . "include[s] the offenses of aiding

and abetting, conspiring, and attempting to commit such offenses." *Id.*, § 4B1.2, cmt. n.1.

Here, the district court erred in finding that Mr. Johnson's prior conviction for Florida attempted manslaughter—an inchoate offense— qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a)'s enumerated offense clause and thereby increasing Mr. Johnson's base offense level (and guideline range).

### A. Following *Dupree*, Florida Attempted Manslaughter Is Not a Crime of Violence under § 4B1.2(a)(2).

Florida attempted manslaughter is not a crime of violence as defined by § 4B1.2(a)(2), as the clause unambiguously excludes inchoate offenses. In light of the clause's unambiguous language, this Court's recent *en banc* decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), precludes this Court from deferring to the commentary's broader definition of "crime of violence" to include attempt offenses. And in fact, the government has recently conceded as much in the context of Florida attempted strong-arm robbery. *See* Gov. Br. (DE 21), *United States v. Metzler*, No. 22-13759 (11th Cir. Feb. 16, 2023).

In *Dupree*, the *en banc* Court applied the analytic structure articulated by the Supreme Court in *Kisor v. Wilkie*, 139 S. Ct. 2400

(2019), to hold that the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b) did not include inchoate offenses.[2] *Dupree*, 57 F.4th at 1271. The Court began its analysis "with the text of § 4B1.2." *Id*. at 1277. It applied "traditional tools of statutory interpretation" to that text to "conclude that the plain language definition of 'controlled substance offense' . . . unambiguously excludes inchoate offenses." *Id*.

Specifically, the *en banc* Court first noted that the definition of the term "controlled substance offense" in § 4B1.2(b)[3] expressly describes what that term "means," but "does not mention conspiracy or attempt or

---

[2] The inchoate offense used to find Dupree to be a career offender was conspiracy rather than attempt. *See Dupree*, 57 F.4th at 1273. But that is a distinction without a difference. *Dupree* applied its holding to all inchoate offenses listed in the commentary to Application Note 1. *See id*. at 1271, 1276–77.

[3] Section 4B1.2, entitled "Definitions of Terms used in Section 4B1.1," provides:

> (b) The term "controlled substance offense" *means* an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . of the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (emphasis added).

any other inchoate crimes." *Id.* at 1277 (citing § 4B1.2(b)). The Court found this "exclusion of inchoate crimes from the definition of what a term 'means' is a strong indicator that the term does not include those offenses." *Id.* This was so because "[a] 'definition which declares what a term "means" excludes any meaning that is not stated.'" *Id.* (quoting *Burgess v. United States*, 533 U.S. 124, 130 (2008) (alterations in original)). Because the guideline's text did not mention inchoate offenses, *Dupree* agreed with the *en banc* Sixth Circuit that the Sentencing Commission did not interpret § 4B1.2(b) itself when, in the commentary, it made inchoate crimes part of the definition of "controlled substance offense," but instead "purported 'to *add* an offense not listed in the [G]uideline.'" *Id.* at 1278 (quoting *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (*en banc*) (emphasis in original)).

The *en banc* Court in *Dupree* applied additional interpretive cannons to conclude that the Sentencing Commission intentionally excluded inchoate offenses from the definition of "controlled substance offense" in 4B1.2(b). *Id.* The Court explained that "a drafting body such as the Sentencing Commission 'generally acts intentionally when it uses particular language in one section . . . but omits it in another.'" *Id.*

(quoting *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015)). "This 'interpretive cannon . . . applies with particular force' where the provision that includes specific language is in 'close proximity' to the provision that excludes it.'" *Id.* (quoting *MacLean*, 574 U.S. at 391).

Applying these cannons, the *en banc* Court found the lack of express reference to inchoate crimes in § 4B1.2(b) "stands in stark contrast to other definitions in § 4B1.2." *Id. Dupree* noted that the definition of "controlled substance offense" in § 4B1.2(b) "does not include [the inchoate offense of] attempt at all," whereas the definition of "crime of violence" in the elements clause of 4B1.2(a)(1)—a "sister subsection[] within the same Guideline provision"—includes "any offense . . . that has as an element the use, *attempted* use, or threatened use of physical force." *Id.* (emphasis added). Because of the "proximity" of these two provisions, and the inclusion of the inchoate offense of attempt in the elements clause, the *en banc* Court determined that it "must infer that the Sentencing Commission intentionally excluded inchoate offenses from the definition of controlled substance offense." *Id.*

After rejecting several contrary arguments made by the government, *Dupree* concluded that under the analysis required by *Kisor*,

"the text of § 4B1.2(b) unambiguously excludes inchoate crimes," and therefore courts "have no need to consider, much less defer to, the commentary in Application Note 1." *Id.* at 1279. To make this point even more clear, the *en banc* Court overruled prior circuit precedent holding that the commentary in Application Note 1 constituted a binding interpretation of § 4B1.2(b). *Id.* at 1279 n.9.

In light of *Dupree*, this Court cannot rely on the commentary to conclude that Florida attempted manslaughter is a "crime of violence" under the definition found in the enumerated offense clause in § 4B1.2(a)(2). That is because the text of that clause unambiguously excludes inchoate crimes.

Section 4B1.2 provides:

(a) The term "crime of violence" **means** any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

\* \* \*

(2) **is** murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a)(2) (emphases added). This definition does not mention attempt—or any other inchoate crimes. As *Dupree* explains,

"[t]he exclusion of inchoate crimes from the definition of what the term 'means' is a strong indicator that the term does not include those offenses." 57 F.4th at at 1277 (internal quotation marks and citation omitted). Thus, by including attempts in the definition of "crime of violence" in the commentary to Application Note 1, the Commission did not interpret the language of § 4B1.2(a)(2) itself, but instead purported to *add* an offense not listed in the Guideline. *See id.* at 1277–78.

And, as was true in *Dupree*, the lack of any reference to attempt crimes in the enumerated felonies clause "stands in stark contrast to the other definition found in 4B1.2." *Id.* at 1278. Attempts are expressly included in the elements clause's definition of "crime of violence." *See* § 4B1.2(a)(1) ("any offense . . . that has as an element the use, *attempted* use, or threatened use of physical force against the person of another") (emphasis added). As *Dupree* noted, a drafting body generally acts intentionally when it uses particular language in one section, but omits it in another that is in close proximity. 57 F.4th at 1278. And the enumerated felonies clause in § 4B1.2(a)(2) is in even *closer* proximity to elements clause in § 4B1.2(a)(1) than is the "controlled substance offense" definition in § 4B1.2(b) that was at issue in *Dupree*. *See id*. "Because of

their proximity, [this Court] must infer" that the Sentencing Commission intentionally excluded attempt offenses from the definition" of "crime of violence" in the enumerated felonies clause. *Id.*

And because the enumerated felonies clause unambiguously excludes attempts crimes, Mr. Johnson's conviction for Florida attempted manslaughter cannot qualify as a "crime of violence." Under *Kisor* and *Dupree*, the unambiguous exclusion of attempt crimes from the definition of "crime of violence" found in the enumerated offense clause, "concludes [this Court's] analysis, and [it has] no need to consider, much less defer to, the commentary in Application Note 1." *Id.* at 1279. In sum, the definition of "crime of violence" in § 4B1.2(a)(2) does not include attempted offenses.

The government has conceded as much in the context of Florida attempted strong-arm robbery, agreeing that the enumerated offense clause in "§ 4B1.2(a)(2) excludes attempt from its list of felonies that constitute crimes of violence." Gov. Br. at 7, *United States v. Metzler*, No. 22-13759 (11th Cir. Feb. 16, 2023); *see also id.* at 8 (conceding that attempt is a separate offense from a substantive or completed offense). Thus, "*Dupree* dictates the conclusion that Florida attempted strong-arm

robbery does not satisfy [the enumerated offense] clause." *Id.* at 7. That reasoning and conclusion applies with equal force here; *Dupree* dictates the conclusion that Florida attempted manslaughter is not a crime of violence under § 4B1.2(a)(2).

## B. Florida Manslaughter Is Overbroad.

The Court need not go any further, following *Dupree*. But even if the Court were to disagree with Mr. Johnson's analysis above, his prior conviction still could not qualify as a crime of violence because even Florida *completed* manslaughter is not a crime of violence under the enumerated offense clause because it is overbroad as compared to generic voluntary manslaughter.

Florida manslaughter is defined as:

> The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter[.]

Fla. Stat. Ann. § 782.07(1). Generic voluntary manslaughter, by contrast, is the intentional killing of another in the heat of passion upon adequate

provocation.[4] As other Courts of Appeals have held, because Florida's definition includes lesser *mens rea* and broader conduct than the generic federal definition, it is overbroad.[5] Mr. Johnson acknowledges contrary Eleventh Circuit precedent in *In re Burgest*, 829 F.3d 1285, 1287 (11th Cir. 2016). *Burgest*, however—which was the denial of authorization to file a second or successive § 2255 motion[6] and arguably constitutes dicta—failed to apply the categorical approach *at all*, in contravention of existing binding precedent, and engaged in no substantive analysis. *See Ovalles v. United States*, 905 F.3d 1231, 1271–73 (11th Cir. 2018) (Martin, J., dissenting), *abrogated by United States v. Davis*, 139 S. Ct.

---

[4] *See, e.g.*, *United States v. Mendoza-Padilla*, 833 F.3d 1156 (9th Cir. 2016) (citing 2 Wayne R. LeFave, *Substantive Criminal Law* § 15.4 (2d ed. 2007))); *see also* Eleventh Circuit Pattern Jury Instructions, O46.1, Voluntary Manslaughter, 18 U.S.C. § 1112 (requiring that "the Defendant acted intentionally but without malice and in the heat of passion[.]").

[5] *See, e.g.*, *Mendoza-Padilla*, 833 F.3d at 1160–62 (holding Florida manslaughter is broader than generic manslaughter (voluntary and involuntary); *United States v. Garcia-Perez*, 779 F.3d 278, 284 & nn. 23–24, 289 (5th Cir. 2015) (same), *overruled in part by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018). *Reyes-Contreras* has itself been abrogated in part by *Borden v. United States*, 141 S. Ct. 1817 (2021).

[6] The Eleventh Circuit's practice of considering published SOS denials to be binding precedent raises serious due process concerns as well and is another reason *Burgest* should not control here. *See In re Williams*, 898 F.3d 1098, 1100–05 (11th Cir. 2018) (Wilson, J., concurring); *id.* at 1105–10 (Martin, J., concurring)

2319 (2019) (explaining that *Burgest* "ignored Eleventh Circuit precedent that required [the panel] to apply the categorical approach" and instead "merely relied on the label Florida uses"). "Where other circuits used the categorical approach, they found that Florida's manslaughter statute encompasses more acts than those captured in the generic definition." *Id.*

Because it is overbroad as compared to generic voluntary manslaughter, Florida manslaughter is not a crime of violence as defined by § 4B1.2(a)(2), and Florida attempted manslaughter therefore cannot qualify either.

But the Court need not reach the question of whether Florida completed manslaughter is a crime of violence under § 4B1.2(a)(2) because, as explained above, following *Dupree*, Florida attempted manslaughter plainly is not.

* * *

Since Florida attempted manslaughter is not a crime of violence, the district court erred in increasing Mr. Johnson's base offense level and resulting guideline range. This Court must therefore reverse and remand for resentencing. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018); *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016).

## II. The District Court Further Erred in Ordering that Mr. Johnson's Sentence Run Consecutively to Any State-Court Sentences.

Sentencing courts have the authority to order that a sentence run concurrently to another sentence, including a sentence that has not yet been imposed. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.3. The Guidelines provide that a federal sentence "shall be imposed to run concurrently" to "a state term of imprisonment [that] is anticipated to result from another offense that is relevant conduct to the instant offense of conviction[.]" U.S.S.G. § 5G1.3(c).

The Supreme Court has explained that Section 5G1.3 is an "attempt[] to achieve some coordination of sentences imposed where separate prosecutions occur based in part on the same relevant conduct[.]" *United States v. Gonzalez-Murillo*, 852 F.3d 1329, 1337 (11th Cir. 2017) (quoting *Witte v. United States*, 515 U.S. 389, 404 (1995)). And this Court has "elaborated on the important role of § 5G1.3 in protecting a criminal defendant from duplicative prosecutions." *Id.* at 1340 (Rosenbaum, J., concurring) (quoting *United States v. Bidwell*, 393 F.3d 1206, 1209 (11th Cir. 2004)); *see also id.* ("The Double Jeopardy Clause does not prevent different sovereigns . . . from punishing a defendant for

the same criminal conduct. But §§ 5G1.3 and 1B1.3 . . . do. These sections seek to provide one, uniform punishment for the same criminal activity." (cleaned up) (quoting *Bidwell*, 393 F.3d at 1209)).

While, post-*Booker*, § 5G1.3 is not mandatory, sentencing courts' obligation to properly calculate the guidelines before imposing sentence is—and applies to § 5G1.3. *United States v. Ward*, 796 F. App'x 591, 598 (11th Cir. 2019) (district court plainly erred by declining to run federal sentence concurrently with anticipated state sentence). Thus, a court's failure to consider § 5G1.3's applicability or to account for its policy, or to properly explain its deviation from it, constitutes procedural error. *Id.* at 598–99; *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (the district court commits procedural error when it fails to calculate, or improperly calculates, the guidelines, fails to appreciate its authority under the guidelines, fails to consider the § 3553(a) factors, or fails to adequately explain its deviation from the guidelines); *see also Gall v. United States*, 552 U.S. 38, 50 (2007) (a sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing); *United States v. Brown*, 772 F.3d 1262, 1266 (11th Cir. 2014) (explaining that, when a

district court imposes a sentence outside the applicable Guidelines, it "must explain why the variance is appropriate and cite sufficient justifications.")

In *Ward*, the district court declined the defendant's request to run his federal felon-in-possession sentence concurrently with his anticipated state sentences, stating that, while the state attempted murder and burglary charges arose out of the same incident, they were different charges. 796 F. App'x at 595. Despite concluding that the issue was not preserved, this Court found plain error because the sentencing court had failed to adequately consider § 5G1.3 or its policy, and its explanation that the state offenses were "for different charges" was neither the proper analysis under the guidelines nor provided a sufficient reason to deviate from it. *Id.* at 598–99.

Here, the district court's failure to order that the sentence run concurrently to Mr. Johnson's yet-to-be-imposed state sentences was similarly erroneous.

In his PSI objections and again at the sentencing hearing, Mr. Johnson asked the district court to order that his sentence run concurrently with the anticipated terms of imprisonment in his pending

state cases identified in paragraphs 56–58 of the PSI. (*See* DE 32:5; DE 44:11–16; *see also* PSI ¶¶ 56–58 (stating that, according to the arrest affidavits, these cases "reflect[] the same circumstances as those in the instant offense")). The government did not oppose this request. Nevertheless, the sentencing court did the exact opposite, "find[ing] that the sentence should run *consecutively* to any sentence imposed by the state court." (DE 44:13).

The district court did not acknowledge § 5G1.3 or its policy; nor did it explain its reasoning or otherwise articulate any 18 U.S.C. § 3553(a) factors in support of its decision to disregard and deviate from the guideline. This constituted procedural error. *See Pugh*, 515 F.3d at 1189; *Gall*, 552 U.S. at 50; *Brown*, 772 F.3d at 1266; *see also* 18 U.S.C. § 3584(b) (sentencing court "shall consider . . . the factors set forth in section 3553(a)" when determining whether to impose a sentence concurrently or consecutively). Moreover, the court appeared to mistakenly believe that Mr. Johnson would be able to seek a concurrent sentence from the state court even where the district court had already ordered that it run

consecutively, demonstrating an erroneous understanding of its authority and the effect of its decision.[7]

In sum, the district court's failure to run Mr. Johnson's sentence concurrently to his anticipated state sentences, and to instead order that it run consecutively, constituted procedural error and was unreasonable. Thus, this Court should reverse and remand for resentencing.

## III. Following *Bruen*, § 922(g)(1) is Facially Unconstitutional, and Mr. Johnson's Conviction Must Be Vacated.

The constitutionality of 18 U.S.C. § 922(g), "is a jurisdictional issue that [Mr. Johnson] did not waive upon pleading guilty." *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (holding constitutional

---

[7] If the federal judgment is silent, or if the federal judgment says consecutive, and the state authorities have primary jurisdiction over the defendant (as is the case here) the Federal Bureau of Prisons (BOP), relying on 18 U.S.C. § 3584(a), will compute the federal sentence as consecutive with the state sentence regardless of what the state court ultimately says. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the [district] court orders that the terms are to run concurrently.") And because where, as here, the state has primary jurisdiction, the federal sentence will be served second (after the state sentence is complete), it is the BOP's computation that matters in determining whether a sentence will, in actuality, be served consecutively or concurrently. Thus, by saying "consecutive" the district court here made it impossible for Mr. Johnson to even attempt to receive a concurrent sentence from the state court. Thus, the court's decision was based on an erroneous understanding of its own authority and the effect of its actions.

challenge to statute of conviction was jurisdictional). Mr. Johnson's conviction must be vacated because § 922(g)(1) is facially unconstitutional following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* marked a dramatic shift in Second Amendment law, setting forth a clear, two-part "text and history" test for deciding the constitutionality of all firearm regulations. *See Nat'l Rifle Ass'n v. Bondi*, __ F.4th __, 2023 WL 2484818, at *3 (11th Cir. Mar. 9, 2023). Specifically, conduct falling within the Second Amendment's plain text is presumptively protected, and regulating such conduct is unconstitutional unless the government can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137. *Bruen* abrogated this Court's post-*Heller* case law, including *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010).

Beginning with *Bruen's* first step: "the Second Amendment's plain text covers [the defendant's] conduct." *Bruen*, 142 S .Ct. at 2129–30. That text contains three elements, guaranteeing the right (1) "of the people,"

(2) "to keep and bear," (3) "arms." *District of Columbia v. Heller*, 554 U.S. 570, 579–95 (2008). All three are met here.

First, as an American citizen and life-long member of the national community, Mr. Johnson is part of the "people" protected by the Second Amendment. The Supreme Court in *Heller* made clear that "the people" in the Second Amendment "unambiguously refers" to "all Americans" and "all members of the political community"—"not an unspecified subset." *Id.* at 579–81 (emphasis added); *see also id.* at 579–80 (citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990)) (explaining that "the people" has the same meaning in the Second Amendment, the First Amendment's Assembly-and-Petition Clause, and the Fourth Amendment's Search-and-Seizure Clause). This is consistent with the plain meaning of the word "people" at the time the Bill of Rights was adopted, defined as "[t]he body of persons who compose a community, town, city or nation"—a term "comprehend[ing] all classes of inhabitants." II Noah Webster, *An American Dictionary of the English Language* (1828). The Second Amendment does not draw a felon/non-felon distinction, and as the Eleventh Circuit and other Courts of Appeals have recognized, there is no felon/non-felon distinction with the term

"people" in the Second Amendment. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022); *see also United States v. Meza-Rodriguez*, 798 F.3d 664, 671 (7th Cir. 2015). Thus, Mr. Johnson is part of the "people" protected by the Second Amendment's plain text.

Secondly, the right to "keep" and "bear" arms clearly includes the right to possess a handgun both inside and outside of the home. *See Bruen*, 142 S. Ct. at 2134–35. And finally, "arms" plainly includes both handguns and ammunition. *See Heller*, 554 U.S. at 582 & 629; *see also Bruen*, 142 S. Ct. at 2132, 2143; *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. of N.J.*, 910 F.3d 106, 116 (3d Cir. 2018); *Jackson v. City of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). Because the Second Amendment's plain text covers, and thus "presumptively protects" the conduct of possessing and carrying a handgun and ammunition both inside and outside of the home, Mr. Johnson has satisfied step one of *Bruen*'s analysis.

*Bruen*'s second step requires the government to establish that § 922(g)(1)'s total ban on felons possessing any firearms or ammunition "is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights

was adopted in 1791." *Bruen,* 142 S. Ct. at 2126. Because § 922(g)(1) is directed at a longstanding societal problem—felons and firearms both existed at the time of the founding—the lack of prevalent, "distinctly similar" historical regulations means the statute is unconstitutional. A review of the historical record reveals a complete lack of felon disarmament laws at the time. *See, e.g.*, *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting); Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374, 1376 (2009). And, in fact, felons were not only permitted to possess firearms, but often *required* to do so as members of the militia. The first felon-in-possession laws were not enacted until the 20th Century; the first firearm regulation in America broadly prohibiting all felons from possessing firearms was not enacted until nearly *two centuries* after the nation's founding. *See Kanter*, 919 F.3d at 464 n.12, 462 (Barrett, J., dissenting). In sum, there was no historical tradition of gun regulations "distinctly similar" to § 922(g)(1)— and certainly the government cannot meet its burden of establishing that there was. As such, § 922(g)(1) is facially unconstitutional, and Mr. Johnson's conviction must be vacated.

# CONCLUSION

For the foregoing reasons, Mr. Johnson respectfully requests that this Court vacate his conviction. In the alternative, he respectfully requests that the Court vacate his sentence and remand for resentencing.

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*/s/ Kate Taylor*
Kate Taylor
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 5,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Kate Taylor*
Kate Taylor

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 28 day of March, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and mailed seven copies to the Clerk of Court via third-party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Lisa Tobin Rubio, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132, and Laura Thomas Rivero, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Kate Taylor*
Kate Taylor